**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BT WEARABLES LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>DILLARD'S INC.,<br><br>              Defendant. | CIVIL ACTION NO. 2:23-cv-00343<br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff BT Wearables LLC ("BT Wearables" or "Plaintiff") files this Complaint against Defendant Dillard's Inc. ("Defendant" or "Dillard's") alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action against Defendant for infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**.

| Ex. | U.S. Patent No. | Title |
|---|---|---|
| A. | 9,204,796 | Personal Emergency Response (PER) System |
| B. | 9,775,520 | Wearable Personal Monitoring System |
| C. | 10,362,940 | Personal Emergency Response (PER) System |
| D. | 10,729,336 | Smart Watch |
| E. | 11,051,704 | Smart Watch |

2.     Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.    Plaintiff BT Wearables LLC is a limited liability company organized under the laws of the State of Texas, with a registered office located in Austin, Texas (Travis County).

4.    BT Wearables is the owner of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.

5.    On information and belief, Defendant Dillard's Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 1600 Cantrell Rd, Little Rock, Arkansas 72201-1145.

6.    On information and belief, Defendant may be served with process through its registered agent for service, Registered Agent Solutions Inc., which is located at Corporate Center One, 5301 Southwest Parkway, Austin, Texas 78735.

## JURISDICTION AND VENUE

7.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.    Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, *et seq.*

10.    Venue is proper against Dillard's in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.,* 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.    Defendant is subject to this Court's specific and general personal jurisdiction due at least to Defendant's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

12.    For Example, Defendant operates multiple retail locations in this District, at locations including, but not limited to: 2603 Preston Rd, Frisco, Texas 75043; 2501 Dallas Pkwy, Plano, Texas 75093; 4601 S Broadway Ave, Tyler, Texas 75703; 3500 McCann Rd, Longview, Texas 75605; 5955 Eastex Fwy, Beaumont, Texas 77706; and 2400 Richmond Rd, Texarkana, Texas 75503.[1]

13.    Specifically, Defendant intends to do and does business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers their products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

14.    Defendant, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering for sale, and/or selling products and/or services that infringe one or more claims of the Asserted Patents in this District.

15.    Defendant purposefully availed themself of the benefits of doing business in the State of Texas and the exercise of jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice.

---

[1] *See* https://www.dillards.com/stores/texas

## THE ACCUSED PRODUCTS

16.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.    Based upon public information, Dillard's owns, operates, advertises, uses, controls, sells, imports, and/or offers for sale, and instructs its subsidiaries, affiliates, and end users to use, the Citizen CZ Smartwatch Sport Touchscreen, Citizen CZ Smartwatch Casual Touchscreen, and Citizen CZ Smartwatch Hybrid (collectively the "Citizen CZ Smartwatch") and related hardware, software, and functionality that among other features calculates the calories burned by the user and transmits this data to a remote device; includes a user input device for selecting an exercise; includes an accelerometer and heart rate sensor; executes speech commands from the user; couples to a mobile telephone; and identifies the activity of the user ("Accused Products").



Source: https://www.citizenwatch.com/us/en/technology-smartwatches.html



Source: https://fccid.io/YUQ-YF0MV01/Internal-Photos/04-Short-Term-Confidential-Internal-Photo-4513921



Source: https://www.citizenwatch.com/us/en/technology-smartwatches.html

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,204,796

18.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.    The USPTO issued U.S. Patent No. 9,204,796 ("the '796 patent") on December 18, 2015, after full and fair examination of Application No. 13/952,607 which was filed on July 27, 2013.  *See* Ex. A at A-1.

20.    BT Wearables owns all rights, interest, and title in and to the '796 patent, including the sole and exclusive right to prosecute this action and enforce the '796 patent against infringers, and to collect damages for all relevant times.

21.    The claims of the '796 patent are not directed to an abstract idea.  For example, claim 1 of the '796 patent recites a system that uses one or more sensors to detect the motion of a mobile object, coupled with a processor and a wireless transceiver that classify sequences of movements by the mobile object into groups of similar postures based on a model and then uses the model to identify the activity of the mobile object.  The claimed inventions of the '796 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that provide an improved system for tracking a user's physical activity and identifying the type of activity using modeling.

22.    The written description of the '796 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

23.    Dillard's has directly infringed the '796 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.

24.    Dillard's has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '796 patent.  For instance, the Accused Products include one or more sensors to detect movement of a mobile object, a processor and a wireless transceiver to classify sequences of movements of the mobile object into groups of similar postures represented by a model and to apply the model to identify an activity of the mobile object, and the processor furthermore identifies each elemental motion of a sequence of elemental motions of the mobile object, and identifies the activity of the mobile object by matching the sequence of identified elemental

motions with one or more stored sequences of elemental motions, wherein each stored sequence of elemental motions corresponds with an activity. More specifically, and as just one example of infringement, Dillard's makes, has made, uses, provides, supplies, distributes, sells, markets, or offers the Accused Products, which has a system compromising sensors, a processor, and a wireless transceiver. This allows the device to identify various activities conducted by the user (*e.g.,* running, walking, biking, and rowing) based on the movements of the Accused Product.

25. Since at least the time of receiving the relevant original complaint(s) in this action, Dillard's has also indirectly infringed one or more claims of the '796 patent by inducing others to directly infringe said claims. Dillard's has induced end-users, including, but not limited to, Dillard's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '796 patent by providing or requiring use of the Accused Products. Dillard's took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '796 patent, including, for example, claim 1. Such steps by Dillard's included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Dillard's is performing these steps, which constitute induced infringement with the knowledge of the '796 patent and with the knowledge that the induced acts constitute infringement. Dillard's is aware that the normal and customary use of the Accused Products by others would infringe the '796 patent. Dillard's inducement is ongoing.

26. Dillard's has also indirectly infringed by contributing to the infringement of the '796 patent. Dillard's has contributed to the direct infringement of the '796 patent by its personnel,

contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '796 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '796 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dillard's contributory infringement is ongoing.

27.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '796 patent.

28.    Dillard's has had knowledge of the '796 patent at least as of the date when it was notified of the filing of this action.

29.    Furthermore, on information and belief, Dillard's has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables patent rights.

30.    Dillard's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dillard's.

31.    Dillard's direct and indirect infringement of the '796 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

32.    BT Wearables has been damaged as a result of the infringing conduct by Dillard's alleged above.  Thus, Dillard's is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

33.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Dillard's infringement of the '796 patent.  Dillard's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology.  The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,775,520

34.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

35.    The USPTO issued U.S. Patent No. 9,775,520 ("the '520 patent") on October 3, 2017, after full and fair examination of Application No. 14/931,002, filed on November 3, 2015.  *See* Ex. B at B-1.

36.    BT Wearables owns all rights, interest, and title in and to the '520 patent, including the sole and exclusive right to prosecute this action and enforce the '520 patent against infringers, and to collect damages for all relevant times.

37.    The claims of the '520 patent are not directed to an abstract idea.  For example, claim 1 of the '520 patent recites a monitoring apparatus comprising a housing worn on the wrist with an accelerometer, processor, and wireless transceiver, and using signals from the accelerometer, uses the processor to analyze whether those signals indicate a pre-determined exercise and calculates the calories burned by the user and transmits this data to a remote device.  The claimed inventions of the '520 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that provide improved tracking of a

user's physical activity and the type of exercise of the user to calculate calories burned by the user using a monitoring device.

38.    The written description of the '520 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    Dillard's has directly infringed the '520 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.

40.    Dillard's has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '520 patent. For instance, the Accused Products comprise a housing adapted to be worn on a wrist, including an accelerometer, a transceiver and a processor that analyzes signals from the accelerometer to determine whether the signals are indicative of predefined exercise and computes calories burned by the person based on the signals from the accelerometer and the predefined exercise and transmits the calories burned to a remote device via the transceiver. More specifically, and as just one example of infringement, Dillard's makes, has made, uses, provides, supplies, distributes, sells, markets, or offers the Accused Products, which utilizes a processor in conjunction with an accelerometer to identify a predefined exercise conducted by the user and then use this data along with subsequent signals from the accelerometer to calculate the calories burned by the user.

41.    Since at least the time of receiving the relevant original complaint(s) in this action, Dillard's has also indirectly infringed one or more claims of the '520 patent by inducing others to

directly infringe said claims.  Dillard's has induced end-users, including, but not limited to, Dillard's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '520 patent by providing or requiring use of the Accused Products. Dillard's took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '520 patent, including, for example, claim 1.  Such steps by Dillard's included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dillard's is performing these steps, which constitute induced infringement with the knowledge of the '520 patent and with the knowledge that the induced acts constitute infringement.  Dillard's is aware that the normal and customary use of the Accused Products by others would infringe the '520 patent.  Dillard's inducement is ongoing.

42.    Dillard's has also indirectly infringed by contributing to the infringement of the '520 patent.  Dillard's has contributed to the direct infringement of the '520 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '520 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '520 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dillard's contributory infringement is ongoing.

43.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '520 patent.

44.    Dillard's has had knowledge of the '520 patent at least as of the date when it was notified of the filing of this action.

45.    Furthermore, on information and belief, Dillard's has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

46.    Dillard's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dillard's.

47.    Dillard's direct and indirect infringement of the '520 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

48.    BT Wearables has been damaged as a result of the infringing conduct by Dillard's alleged above.  Thus, Dillard's is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

49.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Dillard's infringement of the '520 patent.  Dillard's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology.  The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,362,940

50.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

51.    The USPTO issued U.S. Patent No. 10,362,940 ("the '940 patent") on July 30, 2019, after full and fair examination of Application No. 15/684,670, filed on August 23, 2017. *See* Ex. C at C-1.

52.    BT Wearables owns all rights, interest, and title in and to the '940 patent, including the sole and exclusive right to prosecute this action and enforce the '940 patent against infringers, and to collect damages for all relevant times.

53.    The claims of the '940 patent are not directed to an abstract idea. For example, claim 1 of the '940 patent recites a monitoring apparatus worn on a wrist comprising a housing and including a processor, accelerometer, and user input device, where the user input device is adapted to select a predefined exercise and the processor computes activity data based on signals from the accelerometer. The claimed inventions of the '940 patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that provide an improved wrist device for tracking a user's physical activity and identifying activity data related to a specific type of exercise.

54.    The written description of the '940 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55. Dillard's has directly infringed the '940 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.

56. Dillard's has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '940 patent.  For instance, the Accused Products comprise a housing adapted to be worn on a wrist with an accelerometer, a processor, and a user input device where the user input device can select a predefined exercise and the processor computes activity data for the exercise based on signals from the accelerometer.  More specifically, and as just one example of infringement, Dillard's makes, has made, uses, provides, supplies, distributes, sells, markets, or offers the Accused Products. This wearable monitoring device is specifically designed to be worn on the user's wrist and includes a wristwatch housing, accelerometer, processor, and a user input device in the form of a touchscreen and/or one or more buttons.  Additionally, the Accused Products include an accelerometer, processor, and enables the user to choose a pre-defined exercise and subsequently gathers data regarding the user's activity based on the selected predefined exercise.

57. Since at least the time of receiving the relevant original complaint(s) in this action, Dillard's has also indirectly infringed one or more claims of the '940 patent by inducing others to directly infringe said claims.  Dillard's has induced end-users, including, but not limited to, Dillard's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '940 patent by providing or requiring use of the Accused Products. Dillard's took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '940 patent, including, for example, claim 1.  Such steps by Dillard's included, among

other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dillard's is performing these steps, which constitute induced infringement with the knowledge of the '940 patent and with the knowledge that the induced acts constitute infringement.  Dillard's is aware that the normal and customary use of the Accused Products by others would infringe the '940 patent.  Dillard's inducement is ongoing.

58.    Dillard's has also indirectly infringed by contributing to the infringement of the '940 patent.  Dillard's has contributed to the direct infringement of the '940 patent by its personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '940 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '940 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dillard's contributory infringement is ongoing.

59.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '940 patent.

60.    Dillard's has had knowledge of the '940 patent at least as of the date when it was notified of the filing of this action.

61.    Furthermore, on information and belief, Dillard's has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

62.    Dillard's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dillard's.

63.    Dillard's direct and indirect infringement of the '940 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

64.    BT Wearables has been damaged as a result of the infringing conduct by Dillard's alleged above.  Thus, Dillard's is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.    BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Dillard's infringement of the '940 patent.  Dillard's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology.  The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,729,336**

66.    BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

67.    The USPTO issued U.S. Patent No. 10,729,336 ("the '336 patent") on August 4, 2020, after full and fair examination of Application No. 15/626,022, filed on June 16, 2017.  *See* Ex. D at D-1.

68.     BT Wearables owns all rights, interest, and title in and to the '336 patent, including the sole and exclusive right to prosecute this action and enforce the '336 patent against infringers, and to collect damages for all relevant times.

69.     The claims of the '336 patent are not directed to an abstract idea.  For example, claim 1 of the '336 patent recites a wrist-watch that tracks at least one body parameter and includes a processor, a transceiver, an accelerometer, at least one heart monitoring sensors for detecting a vital sign and a telephone with a positioning system wirelessly coupled to the wearable appliance and is capable of off-loading at least a portion of the speech-processing from the wearable appliance and a remote server wirelessly coupled to the wearable appliance through the transceiver or telephone.  The claimed inventions of the '336 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that provide an improved system for tracking a user's vital signs, movements, and activity using a wrist-watch that has speech processing capabilities.

70.     The written description of the '336 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

71.     Dillard's has directly infringed the '336 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.

72.     Dillard's has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 of the '336 patent.  For instance, those Accused Products that are sold under the

name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen are an appliance that monitors one or more body parameters, the appliance including a wrist-watch housing, a processor, a transceiver, an accelerometer and one or more heart monitoring sensors coupled to a back of the wrist-watch housing configured to be coupled to a wrist to detect a vital sign, where the accelerometer detects user movement, and one or more additional sensors that detect body activity, and which further include a telephone with a positioning system wirelessly coupled to the wearable appliance where the telephone offloads at least a portion of speech processing from the processor of the wearable appliance and a remote-server wirelessly coupled through the transceiver or the telephone.   More specifically, and as just one example of infringement, Dillard's makes, has made, uses, provides, supplies, distributes, sells, markets, or offers those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen.   These devices integrate a sophisticated system capable of measuring various body parameters such as physical activity, sleep patterns, heart rate, and calorie expenditure.  Moreover, the devices are equipped with WiFi and Bluetooth transceivers that can be activated or deactivated by the user using the digital touch screen interface.  Additionally, the devices incorporates an accelerometer and sensor located on the rear of the casing, which can detect vital signs.  Furthermore, the devices include supplementary sensors like a gyroscope, altimeter, barometer, and SP02 monitor.  The devices are also compatible with Amazon Alexa, allowing wireless pairing with any smartphone that supports GPS positioning.  This enables the smartphones to offload certain aspects of speech processing to the Citizen CZ Smartwatch.  Additionally, the devices can establish a connection with Alexa's remote cloud servers.

73.    Since at least the time of receiving the relevant original complaint(s) in this action, Dillard's has also indirectly infringed one or more claims of the '336 patent by inducing others to directly infringe said claims.  Dillard's has induced end-users, including, but not limited to, Dillard's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '336 patent by providing or requiring use of those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen.  Dillard's took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the devices in a manner that infringes one or more claims of the '336 patent, including, for example, claims 1.  Such steps by Dillard's included, among other things, advising or directing personnel, contractors, or end-users to use the devices in an infringing manner; advertising and promoting the use of the devices in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dillard's is performing these steps, which constitute induced infringement with the knowledge of the '336 patent and with the knowledge that the induced acts constitute infringement.  Dillard's is aware that the normal and customary use of the devices by others would infringe the '336 patent.  Dillard's inducement is ongoing.

74.    Dillard's has also indirectly infringed by contributing to the infringement of the '336 patent.  Dillard's has contributed to the direct infringement of the '336 patent by its personnel, contractors, and customers.  Those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '336 patent, including, for example, claims 1.  The special features constitute a material part of the invention of one or more of the

claims of the '336 patent and are not staple articles of commerce suitable for substantial non-infringing use. Dillard's contributory infringement is ongoing.

75. BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '336 patent.

76. Dillard's has had knowledge of the '336 patent at least as of the date when it was notified of the filing of this action.

77. Furthermore, on information and belief, Dillard's has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

78. Dillard's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dillard's.

79. Dillard's direct and indirect infringement of the '336 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

80. BT Wearables has been damaged as a result of the infringing conduct by Dillard's alleged above. Thus, Dillard's is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81. BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. BT Wearables has and will continue to suffer this harm by virtue of Dillard's infringement of the '336 patent. Dillard's actions have interfered with and will interfere with BT Wearables' ability to license technology. The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology. The

public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,051,704

82.     BT Wearables repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

83.     The USPTO issued U.S. Patent No. 11,051,704 ("the '704 patent") on July 6, 2021, after full and fair examination of Application No. 15/625,483, filed on June 16, 2017. *See* Ex. E at E-1.

84.     BT Wearables owns all rights, interest, and title in and to the '704 patent, including the sole and exclusive right to prosecute this action and enforce the '704 patent against infringers, and to collect damages for all relevant times.

85.     The claims of the '704 patent are not directed to an abstract idea.  For example, claim 1 of the '704 patent recites wrist-watch that tracks at least one body parameter and includes a processor, a transceiver, an accelerometer, at least one heart monitoring sensor to detect a vital sign, and a processor capable of detecting a heart problem, further comprising a telephone with a positioning system and that is capable of performing speech processing on speech captured by the wrist-watch and further coupled to a remote server through the transceiver or telephone.   The claimed inventions of the '704 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that provide an improved system for tracking a user's vital signs and detecting a heart problem using a wrist-watch that has speech processing capabilities.

86.     The written description of the '704 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

87.    Dillard's has directly infringed the '704 patent by making, having made, using, testing, providing, supplying, distributing, selling, marketing, or offering the Accused Products to customers.

88.    Dillard's has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '704 patent.  For instance, those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen are a wearable appliance, the appliance including a wrist-watch housing, a processor, a transceiver, an accelerometer and one or more heart monitoring sensors configured for vital sign detection, where the processor is capable of detecting a heart problem, and further including a telephone that has a positioning system wirelessly coupled to the wearable appliance, the telephone performing speech processing and the processor of the wearable appliance capturing speech, and a remote-server wirelessly coupled to the wearable appliance through the transceiver or the telephone.  More specifically, and as just one example of infringement, Dillard's makes, has made, uses, provides, supplies, distributes, sells, markets, or offers those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen. These devices integrates a sophisticated system capable of measuring various body parameters such as physical activity, sleep patterns, heart rate, and calorie expenditure.  Moreover, the devices are equipped with WiFi and Bluetooth transceivers that can be activated or deactivated by the user using the digital touch screen interface.  Additionally, it incorporates an accelerometer and sensor located on the rear of the casing, which can detect vital signs.  Furthermore, these devices include

supplementary sensors like a gyroscope, altimeter, barometer, and SP02 monitor.  The devices are also equipped with the Wellness Application/Citizen YouQ app software, which in conjunction with the watch's activities, detects and notifies the user of heart rate changes and problems.2  The watch is also compatible with, among other applications, Amazon Alexa, allowing wireless pairing with smartphones that support GPS positioning.  This enables the smartphones to perform speech processing on speech captured by the processor of the Accused Products.  Additionally, the watch can establish a connection with Alexa's remote cloud servers.

89.    Since at least the time of receiving the relevant original complaint(s) in this action, Dillard's has also indirectly infringed one or more claims of the '704 patent by inducing others to directly infringe said claims.  Dillard's has induced end-users, including, but not limited to, Dillard's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '704 patent by providing or requiring use of those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen.  Dillard's took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '704 patent, including, for example, claims 1.  Such steps by Dillard's included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Dillard's is performing these steps, which constitute induced infringement with the knowledge of the '704 patent and with the knowledge

---

2 *See* https://www.citizenwatch-global.com/support/html/en/p991/index_faq_p991.html; *see also* https://support.citizenwatch.com/hc/en-us/articles/13303986041367-How-do-I-use-YouQ-?_ga=2.85203545.1193173246.1689942725-1698613302.1689356896.

that the induced acts constitute infringement.  Dillard's is aware that the normal and customary use of the devices by others would infringe the '704 patent.  Dillard's inducement is ongoing.

90.    Dillard's has also indirectly infringed by contributing to the infringement of the '704 patent.  Dillard's has contributed to the direct infringement of the '704 patent by its personnel, contractors, and customers.  Those Accused Products that are sold under the name Citizen CZ Smartwatch Sport Touchscreen and Citizen CZ Smartwatch Casual Touchscreen have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '704 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '704 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Dillard's contributory infringement is ongoing.

91.    BT Wearables or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '704 patent.

92.    Dillard's has had knowledge of the '704 patent at least as of the date when it was notified of the filing of this action.

93.    Furthermore, on information and belief, Dillard's has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of BT Wearables' patent rights.

94.    Dillard's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Dillard's.

95.    Dillard's direct and indirect infringement of the '704 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

96.     BT Wearables has been damaged as a result of the infringing conduct by Dillard's alleged above.  Thus, Dillard's is liable to BT Wearables in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.     BT Wearables has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  BT Wearables has and will continue to suffer this harm by virtue of Dillard's infringement of the '704 patent.  Dillard's actions have interfered with and will interfere with BT Wearables' ability to license technology.  The balance of hardships favors BT Wearables' ability to commercialize its own ideas and technology.  The public interest in allowing BT Wearables to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

98.     Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

99.     WHEREFORE, BT Wearables requests that the Court find in its favor and against Dillard's, and that the Court grant BT Wearables the following relief:

   a.   Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Dillard's or all others acting in concert therewith;

   b.   A permanent injunction enjoining Dillard's and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the Asserted Patents; or, in the alternative,

an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.  Judgment that Dillard's account for and pay to BT Wearables all damages to and costs incurred by BT Wearables because of Dillard's infringing activities and other conduct complained of herein;

d.  Judgment that Dillard's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Dillard's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award BT Wearables its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>July 21, 2023</u>                    Respectfully submitted,

                                       By: <u>*/s/ James F. McDonough, III*</u>

                                       James F. McDonough, III (GA 117088) *
                                       Jonathan R. Miller (GA507179) *
                                       Travis E. Lynch (GA 162373) *
                                       **ROZIER HARDT MCDONOUGH, PLLC**
                                       659 Auburn Avenue NE, Unit 254
                                       Atlanta, GA 30312
                                       Telephone (470) 480-9505, -9517, -9514
                                       Email: jim@rhmtrial.com
                                       Email: miller@rhmtrial.com
                                       Email: lynch@rhmtrial.com

                                       C. Matthew Rozier (CO 46854) *
                                       **ROZIER HARDT MCDONOUGH, PLLC**
                                       500 K Street
                                       2nd Floor
                                       Washington, District of Columbia 20005
                                       Telephone: (720) 820-3006
                                       Email: matt@rhmtrial.com

                                       Jonathan L. Hardt (TX 24039906) *
                                       **ROZIER HARDT MCDONOUGH, PLLC**
                                       712 W. 14th Street, Suite C
                                       Austin, Texas 78701
                                       Telephone: (210) 289-7541
                                       Email: hardt@rhmtrial.com

                    **Attorneys for Plaintiff *BT WEARABLES LLC***

                                       *Admitted to the Eastern District of Texas

**<u>List Of Exhibits</u>**

   A. U.S. Patent No. 9,204,796
   B. U.S. Patent No. 9,775,520
   C. U.S. Patent No. 10,362,940
   D. U.S. Patent No. 10,729,336
   E. U.S. Patent No. 11,051,704